UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
INTELLIGENT DIGITAL SYSTEMS, LLC,
RUSS & RUSS PC DEFINED BENEFIT
PENSION PLAN and JAY EDMOND RUSS,

<u>MEMORANDUM AND ORDER</u>

Plaintiffs,

CV 09-974

-against-

(Wexler, J.)

VISUAL MANAGEMENT SYSTEMS, INC.
JASON GONZALEZ, HOWARD HERMAN,
ROBERT MOE, MICHAEL RYAN, COL. JACK
JACOBS, Ret., and MARTY McFEELY,

Defendants.
----------------------------------------------------------X

APPEARANCES:

> IRA LEVINE, ESQ.
> Attorney for Plaintiffs
> 320 Northern Boulevard, Suite 14
> Great Neck, New York 11021
>
> REED SMITH LLP
> BY: PAUL E. BREENE, ESQ.,
> Attorneys for Plaintiffs
> 559 Lexington Avenue 22nd Floor
> New York, New York 10022
>
> CERTILMAN BALIN ADLER & HYMAN, LLP
> BY: MARTIN P. UNGER, ESQ.
>     PAUL B. SWEENEY, ESQ.
> Attorneys for Defendants
> 90 Merrick Avenue
> East Meadow, New York 11554

WEXLER, District Judge:

This is a case that arises out of the parties' business relationship which, in general terms,

1

involved the sale of Plaintiffs' proprietary technology and related business to the Defendant company, Visual Management Systems, Inc., ("VMS"). After VMS defaulted on its obligations pursuant to the parties' business transaction, this action was commenced. The original complaint set forth federal securities fraud claims as well as various state law claims sounding in fraud, negligence and breach of contract.

In an opinion dated January 28, 2010, this court dismissed Plaintiff's securities fraud claims, and granted leave to file an amended complaint alleging diversity jurisdiction as a basis for maintaining federal jurisdiction. An amended complaint, which properly asserts diversity jurisdiction, was filed in March of 2010.[1] An initial conference was held before the assigned Magistrate Judge, setting discovery deadlines. Neither party sought to conduct discovery, nor an extension of time in which to do so. Shortly after the initial conference before the Magistrate Judge, Plaintiff sought leave to move for summary judgment as to certain counts in the amended complaint. No stay of discovery was imposed and still, neither party sought discovery. The motion for summary judgment is now fully briefed and before the court for disposition.

## BACKGROUND

I. The Parties

Plaintiffs are Intelligent Digital Systems, LLC ("IDS"), Russ & Russ Defined Benefit Pension Plan (the "Plan"), and individual Plaintiff Jay Edmond Russ ("Russ"). Defendants are the corporate Defendant VMS, a publicly traded company, individually named Defendants VMS

---

[1] Defendants argue that diversity jurisdiction has not been properly alleged. The court holds that the Amended Complaint properly alleges such jurisdiction, and rejects the opposition to this motion to the extent that it is based on such an argument.

2

Chief Executive Officer Jason Gonzalez, and VMS Board members Robert Moe, Martin McFeely, Michael Ryan and Col. Jack Jacobs (ret.) (collectively, the "Individual Defendants").

II. The Business Agreements

IDS sold certain digital video recorder ("DVR") proprietary technology, along with other assets, to VMS. The transaction involved a sale of assets to VMS pursuant to an asset purchase agreement entered into on April 2, 2008 (the "Asset Purchase Agreement"). The total amount to be paid for the assets conveyed was $1.586 million. The Asset Purchase Agreement provides for payment to be made in the form of: (1) cash in the amount of $42,000, to be paid in seven equal monthly installments to commence on the closing of the transaction and, (2) an unsecured convertible promissory note (the "IDS Note"), payable on April 2, 2011, in the full principle amount of $1.544 million. Additionally, VMS entered into a consulting agreement with Russ (the "Consulting Agreement"). The Consulting Agreement covers the period of April 2, 2008 through April 1, 2012. It provides for a base annual compensation of $75,000, payable in nine initial monthly payments, and thereafter in quarterly installments. The total amount due to Russ after the four year consultancy therefore amounts to $300,000.

The IDS Note, which is governed by New York law, refers to the payment obligation of VMS as "absolute and unconditional." In the event of default on payment of the IDS Note, the full amount due becomes immediately payable. The Consulting Agreement is also governed by New York law. It contains a clear merger clause stating that it constitutes the entire agreement between the parties, replacing and superceding all other agreements and understandings and prohibiting any amendment thereof.

The IDS Note and the Consulting Agreement contain cross-default acceleration

3

provisions, so that the failure of VMS to pay an obligation as to one of these agreement results in acceleration of the total payments due on both. See IDS Note §5.3; Consulting Agreement §5. Thus, failure to make a monthly required cash payment on either the IDS Note (executed in connection with the Asset Purchase Agreement), or the Consulting Agreement, results in the immediate payment obligation of VMS in the full amount due on both of these instruments.

At or around the time of the parties' agreement, VMS borrowed $276,192 from the Plan. In connection with that loan, VMS executed a promissory note (the "Plan Note") agreeing to repayment, together with interest, on December 20, 2008. The Plan Note, which is governed by New Jersey law, provides that it is not subject to any change or modification absent a writing incorporating such a change.

III. Defendants' Default

VMS stopped payment as to the cash portion of the Asset Purchase Agreement in August of 2008, leaving a cash balance of $24,000. After making four payments totaling $33,333.32, VMS similarly stopped making payments under the Consulting Agreement. Finally, as to the $267,192 borrowed from the Plan, VMS made no payments – principle or interest – as of the due date of December 20, 2008. This action followed.

IV. The Amended Complaint and the Motion for Summary Judgment

Plaintiffs' amended complaint sets forth eight causes of action. Although the federal securities fraud claims have been dismissed, the amended complaint refers to such claims as the "third" and "fourth" claims for relief. Because these claims have been dismissed, there are only six remaining causes of action. The claims alleging negligence, negligent misrepresentation, mismanagement, and fraud are not the subject of this motion.

The claims as to which summary judgment is sought are those seeking payment on: (1) the IDS Note (the Fifth Claim – asserted on behalf of IDS against VMS); (2) the Consulting Agreement (the Sixth Claim – asserted on behalf of Russ against VMS), and (7) the Plan Note (the Seventh Claim – asserted on behalf of the Plan against VMS). After setting forth applicable legal principles, the court will turn to the merits of the motion.

## DISCUSSION

I. Standards on Motion for Summary Judgment

A grant of summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. The moving party bears the initial burden of showing the absence of a disputed issue of material fact, the burden then shifts to the non-moving party to present specific evidence that demonstrates the existence of a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In determining whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202 (2d. Cir. 1995). That party, however, must present more the a "scintilla" of evidence, and may not rely upon mere speculation. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Del. & Hudson Ry. Co. v. Consol. Rail Corp., 902 F.2d 174, 178 (2d Cir. 1990). Instead, the motion can be defeated only were there is "enough evidence submitted to enable a reasonable juror to return a verdict" in favor of the party opposing the motion. Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 101 (2d

Cir. 2001). If a party opposing summary judgment shows, "by affidavit that, for specified reasons, it cannot present facts essential to justify" its opposition to the summary judgment motion, the court may deny the motion, order a continuance to enable further discovery or "issue any other just order." Fed. R. Civ. P. 56(f).

Where, as here, summary judgment is sought on a note, judgment is appropriately granted when there is "no material question concerning execution and default" of the note. Merrill Lynch Commercial Finance Corp. v. All State Envelopes Ltd., 2010 WL 1177451 *2 (E.D.N.Y. 2010), see Bankers Trust Co. v. F.D. Rich. Co., Inc., 1991 WL 221091 *2 (S.D.N.Y. 1991) (summary judgment is proper when plaintiff establishes proof of note and defendant's failure to make payment). Thus, Plaintiff is entitled to summary judgment unless defendant raises a triable issue of fact as to the reason for non-payment. Valley Nat. Bank v. Greenwich Ins. Co., 254 F. Supp.2d 448, 454 (S.D.N.Y. 2003).

## II.  Disposition of the Motion

As noted, the causes of action as to which summary judgment is sought are those seeking payment under the notes and agreements executed in connection with the parties' business transaction. Thus: (1) IDS seeks entry of judgment as to the IDS Note; (2) the Plan seeks entry of judgment as to the Plan Note, and (3) Russ seeks entry of judgment as to fees due pursuant to the Consulting Agreement. Plaintiffs argue, and Defendants do not deny, that scheduled payments have not been made, and it is clear that Defendants have therefore defaulted under the various agreements. Still, Defendants oppose the motion. Their response to the motion, however, consists of nothing more than a Rule 56.1 statement which admits to all factual allegations regarding execution of the documents and non-payment. As to the Plan Note, Defendants go

further, admitting that the full payment requested is due. The defense arguments regarding the IDS Note and the Consulting Agreement are discussed below.

With respect to the IDS Note and the Consulting Agreement, Defendants, while admitting default in payment, state that the amount sought would be due "if" these agreements were, in fact, "enforceable according to their terms." The only amplification to this argument is contained in the affidavit of Defendant Gonzalez, stated to be the founder, Chief Executive Officer and Chairman of the Board of Directors of VMS. As acknowledged in the public filings of VMS, Gonzalez states that "there is no dispute" that VMS has not met its obligations under the various agreements.

Gonzalez states, however, for the first time in this litigation, that Plaintiffs are not entitled to payment on the IDS Note because of "misrepresentations and breaches of duty" that are alleged to invalidate the agreements. Gonzalez states further that VMS was induced to enter into the agreements as a result of "intentional misrepresentations" by Russ as to the "condition of and readiness for commercial exploitation of the software which was the primary asset" of value in the parties' transaction. Gonzalez also states that Defendants were "coerced" into closing the transaction "before due diligence could occur under threat of a lawsuit for breach of the various binding and non-binding verbal and written agreements between plaintiffs and VMS regarding the sale."

As to the Consulting Agreement, Gonzalez states that Russ has breached some "general fiduciary" duty owed to VMS. It is also argued that the alleged invalidity of the IDS Note prohibits enforcement of the Consulting Agreement.

Gonzalez, who alleged none of the facts or legal theories set forth above in Defendants'

7

answer, and has sought no discovery with respect thereto, seeks no further discovery. Instead, without submission of a proposed amended answer, or an affidavit with respect to discovery, he asserts that Defendants "intend to ask the Court to permit [Defendants'] to assert counterclaims and defenses."

Defendants' response to this motion is plainly insufficient to defeat summary judgment. First, Defendant sets forth no defense whatever with respect to the Plan Note. There can be no question therefore, as to the Plan's entitlement to immediate judgment as to that note.[2] The defenses set forth with respect to the IDS Note and the Consulting Agreement are insufficient to defeat summary judgment. The parties here entered into clear and unambiguous contracts. The court rejects Defendants' attempt to vary those agreements by arguing for the inclusion of unstated terms regarding specific duties, and the representations as to the commercial viability of Plaintiff's software. Even if there were some truth to Defendants' allegations, and the court does not hold that there is, consideration of such extra-contractual conditions is prohibited by the documents' merger clauses in particular, and New York law in general. That law prohibits the type of parol evidence offered by Defendants as to extra-contractual agreements regarding the scope of the documents forming the basis of this lawsuit. W.W.W. Assocs., Inc. v. Giancontieri, 565 N.Y.S.2d 440, 443 (1990); see generally Law Debenture Trust Co. of New York v. Maverick Tube Corp., 595 F.3d 458, 465-67 (2d Cir. 2010)

The court also rejects Defendants' weak claim that VMS was somehow "coerced" into execution of the documents accompanying the parties' business transaction. Gonzalez alleges

---

[2] The lack of any defense with respect to the Plan Note makes in unnecessary to consider any issue with respect to the requirements of the laws of the State of New Jersey, which govern that document.

8

that VMS was coerced into closing the transaction "under threat of a lawsuit for breach of . . . various binding and non-binding verbal and written agreements . . . ."

A claim of duress or coercion sufficient to vitiate a contract requires a showing of: "(1) a threat, (2) which was unlawfully made, and (3) caused involuntary acceptance of contract terms, (4) because the circumstances permitted no other alternative." Kamerman v. Steinberg, 891 F.2d 424, 431 (2d Cir. 1989), quoting, Gulf & W. Corp. v. Craftique Prods., Inc., 523 F. Supp. 603, 610 (S.D.N.Y. 1981). The defense of coercion is stated only where the party resisting contractual enforcement can show that "a wrongful (unlawful) threat exists and, if it does, whether that threat went so far as to deprive the plaintiff of its free will (that is, take away the plaintiff's alternatives)." Interpharm, Inc. v. Wells Fargo Bank, N.A., 2010 WL 1257300 *7 (S.D.N.Y. 2010). Where the threat forming the basis of a coercion defense is a threat is to take legal action to enforce a right, there the defense fails. Kamerman, 891 F.2d at 431 (assertion of intent to exercise a legal right cannot form the basis for a coercion defense); see also Wometco Enterprises, Inc. Teachers Ins. and Annuity Ass'n of America v. Wometco Enterprises, Inc., 833 F. Supp. 344, 348 (S.D.N.Y. 1993). The Gonzalez affidavit asserts nothing more than a "threat" to act in accord with Plaintiffs' rights. It can neither support a claim of coercion, nor defeat summary judgment.

Finally, the court considers the assertion that Defendants plan to ask the court for permission to amend their answer and assert counterclaims. The court observes that no such motion has been made, and is therefore not properly before the court. To the extent, however, that Defendants intend the Gonzalez affidavit to constitute such a motion, it must be denied. As noted, there is no merit to any of the defenses that Defendants belatedly seek to assert. Under

these circumstances, amendment would be futile and must therefore, even if properly sought, be denied. See Health-Chem Corp. v. Baker, 915 F.2d 805, 810 (2d Cir. 1990); McLean v. Brown, 2010 WL 2609341 *8 (E.D.N.Y. 2010) (leave to amend denied as futile when proposed amendment fails to state a claim).

III.   Rule 54(b)

Finding no just reason for delay, the court grants Plaintiffs' request, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, for entry of final judgment as to the claims forming the basis of this motion. The court grants Plaintiffs' request to dismiss the First and Second Claims for relief as to Defendant VMS.

Plaintiff is directed to submit a final judgment as to the claims based upon the IDS Note, the Consulting Agreement and the Plan Note. That judgment is to be submitted to this court, in a sum certain and on notice, within two weeks of the date of this order.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment as to the fifth, sixth and seventh causes of action is granted. Because the court finds no just reason for delay, the Clerk of the Court is directed to dismiss the fraud cause of action as to Defendant VMS, and to enter immediate judgment, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, as to Defendant VMS in accord with a judgment that shall be submitted to the court, on notice, within two weeks of the date of this order.

The parties are directed to confer and report to the court, within two weeks of the date of this order, as to further proceedings in this matter against the Defendants that remain, with the view toward setting a trial date.

The Clerk of the Court is directed to terminate the motion for summary judgment.

SO ORDERED.

LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
August 30, 2010